### THIBODEAUX et al. v. BOYT et al.
### No. 2292.

Court of Civil Appeals of Texas. Beaumont.
Dec. 12, 1932.

Rehearing Denied Dec. 21, 1932.

C. A. Lord, of Beaumont, for appellants.

J. B. Morris, of Beaumont, and Llewellyn & Dougherty, of Liberty, for appellees.

WALKER, C. J.

We take the following statement of the nature and result of this suit from appellants' brief:

"Felix Thibodeaux and Constant Thibodeaux, as plaintiffs, filed their suit in the District Court of Jefferson County, Texas, against Elmer Boyt and J. M. Rich, as defendants, and alleged that on or about the 15th day of January, 1930, the defendants rented to the plaintiffs 320 acres of land in Chambers County, to be cultivated by the plaintiffs in rice and for the purpose of growing a rice crop thereon during said year, and that the defendants agreed to furnish to the plaintiffs the land, the seed rice and the water necessary to properly irrigate the said rice crop, and that the defendants also agreed to furnish one-half of the necessary fertilizer, one-half of the sacks for sacking the rice that might be grown, and to pay one-half of the expense of threshing such crop of rice and hauling the same to market, and that the plaintiffs agreed to prepare the land and cultivate, water and harvest the rice; and they alleged that it was the agreement between the plaintiffs and defendants that the plaintiffs should have one-half of the crop of rice that should be grown by them on the land for said year and that the defendants should have the other half of the rice so grown.

"The plaintiffs further alleged that they timely and properly prepared the land for the rice crop, and in due season planted the crop with the seed furnished by the defendants for that purpose, and they alleged that they did and performed at the proper time and in the proper manner all of the things that they should have done to properly produce and save the rice crop on the rented premises; but that the defendants failed to furnish water according to their agreement so to do for the purpose of irrigating the said rice crop and bringing up the rice, and that on account of the failure of the defendants to furnish and supply the water for irrigation as they had agreed and promised to do, although they furnished some water, the plaintiffs did not make a full crop of rice, and that on account of such failure to furnish the water they had sustained damages in the sum of $7,055.00, which would have been the value of their one-half interest in the rice crop which they would have grown had the water been furnished as it should have been by the defendants, less the cost and expense of harvesting, threshing, sacking and hauling to market the rice that would have been grown, which they alleged would not have been more than 45¢ per sack.

"The plaintiffs also alleged that the rice that was actually grown was taken possession of by the defendants and had been sold and the entire proceeds retained by the defend-

ants, and that the defendants had never accounted to the plaintiffs for the sale of the rice and had wholly failed and refused to do so.

"The case was tried to a jury and the plaintiffs introduced proof of the terms of the rental contract alleged by them, and that they had timely and properly prepared the land for the rice crop and that they had done the various things that they should have done in connection with the rice crop in a farmerlike manner, and they introduced proof of the amount of rice that was actually grown and that the land would have yielded if the rice had received sufficient water at the time the same was needed, and they introduced proof that the defendants had wholly failed to furnish the water at the time and in the amount that was necessary to irrigate and to produce a rice crop, and they showed the effect of the failure to furnish the water; and in support of all of the issues made by their pleadings the plaintiffs introduced proof upon the trial.

"The defendants pleaded the general denial and specially alleged that the plaintiffs did not prepare and cultivate the land in a farmerlike manner and that any failure in the rice crop was due to that, and they alleged that it was the plaintiffs' agreement that they should build and maintain the proper laterals and levees for the irrigation of the rice and holding the water thereon, and that they should pump the water furnished by the defendants at the intake and turn on and off the water at proper times and distribute it over their crops so that they might be economically irrigated, but that they failed to do these things or to perform their contract in these respects, and that on account of these failures on the part of the plaintiffs in connection with their rice crop the same did not make a full crop of rice, and that by reason of these things the crop made 3600 sacks of rice less than it should have made, of the net value of $3.20 per sack, and that one-half of such crop that should have been grown by the plaintiffs would have belonged to the defendants and that therefore they had been damaged in the sum of $5,760.00.

"Defendants alleged also that they had made advancements for labor, supplies, etc., to the plaintiffs, and they attached to their answer what purported to be a verified account setting out the goods, wares, merchandise, labor, money, etc., that they had advanced to plaintiffs, and showing the amount of the credits which the plaintiffs were entitled to receive, and showing and alleging that after the plaintiffs had received credit for all of the rice that they had harvested and sold and for all other things for which they were entitled to credit, the plaintiffs still were indebted to the defendants in the sum of $2,577.02.

"Upon the trial the verified account was introduced in evidence by the defendants over the objections of the plaintiffs, and the defendants introduced evidence tending to establish the issues made by their pleadings."

The issues of fact raised by the pleadings and evidence were submitted to the jury as follows, answered as indicated:

"Special Issue No. 1. Did the defendants reasonably and substantially comply with the terms of the contract between them and plaintiffs to furnish at the intake and dam at proper times under said contract sufficient water to irrigate plaintiffs' crop of rice? Answer 'yes' or 'no,' as you may find the facts to be."

The jury answered special issue No. 1, "No."

"Special Issue No. 2. Did the defendants' failure to furnish said water at the time and place inquired about in Special Issue No. 1 cause any loss in the amount of yield of said rice crop? Answer 'yes' or 'no,' as you may find the facts to be."

The jury answered special issue No. 2, "Yes."

"Special Issue No. 3. How much was the yield of said rice crop reduced, if any, by such failure, if there was such a failure? Answer by giving the number of barrels, if any, said rice crop was so diminished."

The jury answered special issue No. 3, "5,100 barrels, entire yield."

"Special Issue No. 4: What would have been the reasonable market value of said rice per barrel at the time and place that it could and would have been marketed? Answer by stating the amount in dollars and cents."

The jury answered special issue No. 4, "$2.65 per barrel or total $13,515.00."

"Special Issue No. 5: What would have been the reasonable cost per barrel for attending, harvesting, sacking, and marketing such additional rice, if any? Answer by giving the cost per barrel in money, as you may find the facts to be."

The jury answered special issue No. 5, "66¢ per barrel."

"Special Issue No. 6: Did the plaintiffs fail to substantially and reasonably comply with their contract with the defendants to pump to their crop of rice the water furnished them at the intake and dam? Answer 'yes' or 'no,' as you may find the facts to be."

The jury answered special issue No. 6, "No."

"Special Issue No. 9: Did the plaintiffs fail to substantially and reasonably comply with the terms of the contract with defendants in the preparation of the lands in question for the proper planting of rice? Answer 'yes' or 'no' as you may find the facts to be."

The jury answered special issue No. 9, "Yes."

"Special Issue No. 10: Did such failure on the part of plaintiffs cause or contribute to the loss or damage, if any, suffered by the plaintiffs? Answer 'yes' or 'no,' as you may find the facts to be."

The jury answered special issue No. 10, "Yes."

"Special Issue No. 11: In what amount did such failure reduce the total number of barrels of rice which could and would have been grown, harvested, and saved by plaintiffs? Answer by stating the number of barrels."

The jury answered special issue No. 11, "150 barrels."

"Special Issue No. 12: Did the plaintiffs fail to substantially and reasonably comply with their contract with defendants to plant at a proper time and season the rice crop, or any part thereof, in question? Answer 'yes' or 'no' as you find the facts to be."

The jury answered special issue No. 12, "No."

"Special Issue No. 15: Did the plaintiffs fail to substantially and reasonably comply with their contract with defendants to timely harvest the rice crop in question, or any part thereof? Answer 'yes' or 'no,' as you may find the facts to be."

The jury answered special issue No. 15, "No."

The defendants made no objections or exceptions whatever to the court's charge, nor to any of the special issues submitted.

Neither the plaintiffs nor the defendants made any complaint against the findings of the jury, and neither party filed a motion for a new trial.

By their motion for judgment, appellants, plaintiffs below, construed the verdict as finding in their favor for 5,100 barrels of rice, less the 150 barrels found in answer to special issue No. 11, and prayed for judgment against appellees, defendants below, for the value of one-half of 4,950 barrels of rice at $1.99 per barrel, less an admitted indebtedness of $2;-577.02 due by them to appellees. Appellees filed motion for judgment in their behalf upon the verdict of the jury against appellants for $1,201.43. Appellants' motion was refused, and appellees' motion was granted, and judgment in their favor was entered, which contained the following recitation: "The court having considered said verdict, the pleadings, and the evidence on this 2nd day of March, 1932, finds that the same constitutes a verdict upon which the defendants, Elmer Boyt and J. M. Rich, are entitled to a judgment against the plaintiffs, Felix Thibodeaux and Constant Thibodeaux, in the sum of $1,-201.43."

### Opinion.

The correctness of the judgment appealed from must be determined by the proper con-struction of question No. 3, and the jury's answer thereto. There is no ambiguity about this question. The jury was asked a simple question as to how much the yield of appellants' rice crop was reduced by the failure of appellees to furnish water, in accordance with their contract. The ambiguity lies in the answer, "5,100 barrels, entire yield." If the jury answered the question asked, and they had no authority to answer any other question, then appellants have correctly construed the verdict as finding in their favor for 5,100 barrels of rice, less the 150 barrels found by question 11. The trouble with this construction of the verdict is that it finds in favor of appellants for more than they sued for. The allegations of their petition on their measure of damages were as follows: "Plaintiffs allege that if the defendants had furnished and supplied the plaintiffs with sufficient water to irrigate their rice crop as aforesaid, which it was their duty and undertaking to do, the plaintiffs could and would have grown and produced as much as 6,400 sacks of rice. * * * Plaintiffs allege that on account of the failure of the defendants to furnish and supply water for irrigation as they undertook, promised, and agreed to do, the plaintiffs only produced, harvested, and threshed 2,200 sacks of rice, but the plaintiffs allege that they produced, harvested, and put in the shock additional rice amounting to approximately 800 sacks that was not threshed on account of the high water that came into the lower portion of the farm by the fault and negligence of parties other than the plaintiffs, and which occasioned the loss of that much rice in the shock which was lost to the plaintiffs; but that on account of the failure of the defendants to furnish and apply the necessary water for the irrigation of their crop, the plaintiffs sustained a loss of 3,400 sacks of rice, and they allege that if the defendants had timely furnished and supplied the necessary water for the irrigation of their crop as they undertook and promised to do, the plaintiffs would have grown and produced 3,-400 sacks of rice more than they did produce."

■ Appellants plead their case in terms of "sacks." The issues were submitted in terms of "barrels." Under the evidence, the 5,100 "barrels" found by the jury in answer to question No. 3 would amount to 4,080 "sacks." The actual yield of the crop was 2,854 sacks which, added to the loss caused by the failure of appellees to furnish the water, if appellants correctly construed the verdict, would make a crop of 6,934 sacks, while appellants plead a crop of only 6,400 sacks. Again, they plead a loss of 3,400 sacks, and, as they construe the verdict, the jury found a loss of 4,-080 sacks. For this reason the court did not err in overruling appellants' motion for judgment in their favor on the basis of the jury's finding of 5,100 barrels.

■ The judgment in favor of appellees is wholly without support in the verdict. If

the jury meant to find, as appellees insist, that appellants would have made only 5,100 barrels of rice, had appellees not breached their contract, that issue was not submitted, and the finding cannot support the judgment.

We do not reform the judgment of the lower court to conform to appellants' pleadings, because we doubt that such a judgment would have reasonable support in the evidence. While it is true that appellees did not ask for a new trial in the lower court and have not in this court attacked the verdict as being without reasonable support, their excuse is that both they and the court construed the verdict as being in their favor. However, appellees do insist, in their attack upon appellants' construction of the verdict, that such a construction could not have been in the minds of the jury because it would have no reasonable support in the facts. Appellees cannot sustain their judgment under the verdict, and, as it would operate a manifest injustice upon them to reform the judgment to correspond with appellants' pleadings, we think the proper order to be made is to reverse the judgment of the lower court and remand the cause for a new trial, and it is accordingly so ordered.

Reversed and remanded.